In Re: Appointment of Curator and Guardian for the Estate of Frank Adams.

185 So. 153.
Opinion Filed November 25, 1938.
Rehearing Denied January 5, 1939.

*Olin E. Watts, Herman Ulmer, Jennings & Watts* and *Stockton, Ulmer & Murchison,* for Appellant;

*Milam, McIlvain & Milam, Stafford Caldwell* and *Chas. Cook Howell,* for Appellee.

*J. Henry Taylor,* for the Guardian *ad Litem.*

PER CURIAM.—Chapter 17976, Acts of 1937, became effective upon its approval by the Governor, May 27, 1937. Portions of the title and of the provisions of the Act are as follows:

"AN ACT Relating to the Guardianship of Weak-Minded and Physically Incapacitated Persons by the Appointment of a Curator to Take Charge of Their Property, and, if Necessary, a Guardian to Take Charge of Their Persons, * * *.

"Section 1. Whenever, hereafter, any person permanently or temporarily residing in this State, shall become physically incapacitated, or feeble-minded or epileptic or so mentally or physically defective by reason of age, sickness, use of drugs, the excessive use of alcohol, or for other

causes that he or she is unable to take care of his or her property, and in consequence thereof, is liable to dissipate or lose the same, or to become the victim of designing persons, it shall be lawful for either the mother, father, brother, sister, husband, wife, child, next of kin, and in case there be no such relatives, in the Judicial Circuit where the person to be cared for resides, then the Sheriff of the County where the person to be cared for resides to present to a Judge of the Circuit Court, sitting in chancery, of the County in which said person to be cared for resides, his or her petition, under oath, setting forth the facts, naming all members of the family known to such petitioner, together with their addresses, if known, praying the Court to adjudge such person to be unable to take care of his or her property, and to appoint a curator for the estate of such person.

"Section 2. NOTICE OF HEARING TO BE GIVEN.—That thereupon it shall be the duty of the Court to fix a day for the hearing on such application and order that such written notice thereof as the Court shall direct be given to the person against whom the petition is presented, and also to some one or more members of his or her family residing within the jurisdiction, in the same manner as service in Chancery, and, if such person or persons cannot be found within the jurisdiction of the Court, then notice shall be given by such publication as the Court may think proper.

"Section 3. HEARING: TESTIMONY: DECREE.—That upon the day fixed for the hearing the Court shall require the presence of the person against whom the petition is presented, unless there is positive evidence of the fact that such person cannot be brought into Court. At such hearing the Court shall take the testimony of all the parties in interest, and of such other witnesses as the petitioner, and the person against whom proceedings are instituted, or any member of

his or her family he or she may see fit to summons, on the question of the inability of the person against whom the proceedings are taken to care for his or her property because of mental or physical deficiency. The testimony adduced at the hearing shall be transcribed and filed. If the Court on such hearing shall be satisfied that the person against whom the proceedings are taken is not able, owing to weakness of mind or body to take care of his or her property, then it shall be the duty of the Court to appoint a curator of his or her estate, and, if necessary, the Court may appoint a guardian for such person, and in the decree specifically find the facts upon which decree is based. Any person interested may intervene in such proceedings with leave of Court. The same person may be appointed both curator and guardian.

"Section 4. The Court may in its discretion appoint a guardian *ad litem* to represent at the hearing the person against whom the proceedings are taken, and if no person is named or known as next of kin the Court shall appoint a guardian *ad litem*.

"Section 5. The Court may appoint a Committee consisting of two practicing physicians and one layman to inquire into and report its findings upon the question of the disability of such person.

"Section 6. That from and after the rendition of said decree the person against whom the same is entered shall be wholly incapable of making any contract or gift whatever, or any instrument in writing, and the entry of such decree shall be notice of such incapacity, and such person shall be a ward of the Court appointing such curator. * * *

"Section 10. APPEALS.—Any person aggrieved by any of the orders made by the Circuit Judge or the final decree entered under the provisions of this Act, may, within six

months from the date of the entry of such orders or said final decree, appeal to the Supreme Court of the State, and such Court may affirm, reverse or modify the order or decree entered in the lower Court, but no appeal from an order revoking the appointment of a curator and restoring the property to the owner thereof, shall operate as a supersedeas."

On August 17, 1938, a petition under oath was filed in the Circuit Court for Duval County containing pertinent allegations under the above statute as a predicate for appropriate prayers, among others, being the following:

"(5) That on final hearing this Court will adjudge that the said Frank Adams is not able, owing to weakness of mind or body, to take care of his property and will appoint a curator for the Estate of Frank Adams, and in connection with such appointment will consider The Barnett National Bank of Jacksonville peculiarly fitted and equipped for appointment as such curator.

"(6) That this Court will on final hearing adjudge that the said Frank Adams is not able, owing to weakness of mind or body, to take care of his person and that a guardian of his person be appointed and in connection with the appointment of such guardian will consider Rubye Adams as the fit and proper person for such appointment."

The petition contains allegations:

"That Frank Adams has reached the advanced age of seventy-seven years and because of such advanced age and the ravages of a crippling and incapacitating disease from which he has long suffered, has become physically incapacitated and, as a result of such physical incapacity and the resulting mental effects, coupled with advanced senility, is no longer mentally or physically able to take care of his property or his property interests and in consequence of

such physical and mental incapacity is liable to dissipate or lose his property and has become and is now liable to further become the victim of designing persons. * * *

"That because of the physical and mental incapacity of Frank Adams as aforesaid to take care of his property in the particulars above delineated and set forth, and his complete dependence on third persons for every physical and mental act concerning the management, administration and care of his property, he is liable to dissipate or lose the same or to become the victim of designing persons within the meaning and intent of the statutes and laws of this State. * * *

"That your petitioner does not allege or assert any feeble-mindedness, insanity or lack of ultimate comprehension of any fact carefully explained on the part of Frank Adams, but on the contrary alleges distributively only those matters and things specifically required by law in connection with the appointment by this Court of a curator of the estate of Frank Adams and a guardian of his person, that is to say:

"(a) That he is physically incapacitated to such extent as to be unable to take care of his property;

"(b) That he is mentally incapacitated to such an extent as to be unable to take care of his property;

"(c) That because of such physical and mental incapacity, he is liable to lose or dissipate his property;

"(d) That because of such physical and mental incapacity, he is liable to become the victim of designing persons;

"(e) That because of such physical and mental incapacity he is now the victim of designing persons;

"(f) That because of such physical and mental incapacity and the exclusive domination of him and his property by designing persons, substantial portions of his property have already been lost to his estate.

"And in respect to such, matters actually alleged, your

petitioner respectfully shows that upon this Court requiring the presence of Frank Adams at the hearing as mandated by statute, such appearance and the complete and utter inability of Frank Adams to control and activate himself physically or discuss his business or his property or his intentions or desires in respect thereto will reveal to this Honorable Court the factual requirements of the statute and the propriety of this petition and of the Court's order granting the appointment of a curator of the estate of Frank Adams and a guardian of his person."

There are many other allegations to support those quoted.

An order was made fixing the date of hearing which was served, and a guardian *ad litem* was appointed. Motions to dismiss and also to strike portions of the petition were denied.

An amendment to the petition signed by counsel but not sworn to was filed.

The amendment added the name of the petitioner, Lawrence Adams, to the names of the children of Frank Adams, and adds the word "or" after the word "feeble-mindedness," and strikes the words, "or lack of ultimate comprehension of any fact carefully explained to him," from Paragraph IX of the Petition as quoted above.

A motion to strike the amendment was denied, as was a motion to dismiss the petition as amended and a motion by the respondent and the guardian *ad litem* to dismiss the proceedings, on the ground that a trust deed dated September 16, 1938, after the petition was filed, had been executed that will protect the property rights of respondent. The execution of the trust deed could not interrupt the progress of this suit under the statute.

An appeal was taken September 21, 1938, by the respondent and the guardian *ad litem* from the orders denying the motions to dismiss the petition as amended, to strike

the amendments, to dismiss the proceedings, to strike portions of the petition and of the petition as amended, and to dismiss the proceedings on the ground that the properties of the Respondent have been conveyed to Trustees for Respondent. Errors are assigned on the orders appealed from.

The title of the Act relates to "weak-minded and physically incapacitated persons," while the body of the Act refers to "any person permanently or temporarily residing in this State, (who) shall become physically incapacitated or feeble-minded or epileptic or so mentally or physically defective by reason of age, sickness, use of drugs, the excessive use of alcohol, or for other causes, that he or she is unable to take care of his or her property and in consequence thereof, is liable to dissipate or lose the same, or to become the victim of designing persons."

As the body of the Act may include matters relating to the subject briefly expressed in the title and also may include matters properly connected with the subject expressed in the title, and as there is nothing in the body of the Act that is not included in or properly connected with the subject expressed in the title, and as there is no incongruous or misleading matter in the body of the Act considered with the title, Section 16, Article III, of the Florida Constitution is not violated.

The terms "weak-minded and physically incapacitated persons," contained in the title are broad enough to cover the classes of persons covered by the body of the Act. Matters properly connected with the subject as expressed in the title, may be included in the body of the Act when such matters are not incongruous or misleading with reference to the subject briefly expressed in the title.

The words, "whenever, hereafter, any person * * * shall become physically incapacitated or feeble-minded," contained in the first section of the Act as above quoted, do not on

this record exclude the respondent in this case, since it is. alleged that he "has become physically incapacitated and, as a result of such physical incapacity and the resulting mental effects, coupled with advanced senility, is no longer mentally or physically able to take care of his property," etc.

As both weak-mindedness and physical incapacity of the respondent are sufficiently alleged, it is not necessary to discuss the constitutional validity of the statute as it may affect persons who are only physically incapacitated to take care of their own property. If there are unnecessary allegations as to the respondent's physical incapacity that are not germane to the allegations as to weak-mindedness, they may be treated as surplusage. The trial on the pleading and the evidence will be before a Circuit Judge and not by a jury, and the decree and findings of the Chancellor are subject to review.

As, without considering the amendment, the allegations of the petition are sufficient in law to require a response leading to the production of evidence, it is not necessary here to say more than that the amendment does not neutralize or render insufficient the allegations of the petition as a pleading to state a cause of action under the statute, and it is not necessary to discuss whether the amendment not sworn to was properly filed, no evidence having as yet been adduced to show the legal effect in this case of the amendment as filed.

The statute does not illegally deny a jury trial, see Ridgeway v. Darwin, 32 Eng. Rpts. 275; Dodge v. Strong, 2 Johnson's Chancery Repts. 228; or operate to deny due process or equal protection of the laws, to the respondent in the appointment of a curator of his property under the control of a court of equity if the allegations of the petition, are proven by due course of law.

The statute declares a public policy of the State and its

148

provisions control unless they are clearly shown to violate organic law, which is not done in this case.

The orders appealed from are affirmed.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.